IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BENJAMIN JACKSON,** :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>**CITY OF GAHANNA, OHIO, et al.,** :<br>:<br>Defendants. : | Case No. C2:08-CV-0068<br><br>**JUDGE ALGENON L. MARBLEY**<br><br>**Magistrate Judge Abel** |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Defendants City of Gahanna, Sergeant Sheila Murphy, and Chief Dennis Murphy's Motion for Summary Judgment.  *Motion,* Doc. No. 36.  For the reasons that follow, Defendants' motion is **GRANTED** in part and **DENIED** in part.

**II. FACTUAL BACKGROUND**

**A.  The January 19, 2006 Stop**

On January 19, 2006, Benjamin Jackson ("Jackson") parked his maroon four-door older-model Toyota on Goshen Court in Gahanna while visiting a friend who lived on that street.  During a routine patrol at approximately 11:30 p.m., Sergeant Sheila Murphy of the Gahanna Police Department ("Sgt. Murphy") noticed Jackson's car with what she described as a "special plate" affixed to it that struck her as odd on an older car.  She ran the license plate number through the Gahanna dispatcher and learned that the car had been reported stolen.  After parking behind Jackson's car and calling for backup, Sgt. Murphy tried to read the car's VIN number

from outside the car and on the inside of the car door but saw that it had been scratched off. Aiming her flashlight into the vehicle, she saw a marijuana cigarette on the dashboard.

From inside his friend's house, Jackson saw Sgt. Murphy's police cruiser pull up behind his car and walked outside to speak with her. Jackson identified himself to Sgt. Murphy by name and told her that although he had reported his car stolen, he had since reported it recovered. Sgt. Murphy then asked Jackson about the marijuana cigarette. When he asked to see it, Sgt. Murphy opened the car door, retrieved the cigarette, and asked Jackson whether there was anything else illegal in the car. Jackson responded by stating that he was going back inside his friend's house.

Sgt. Murphy did not allow Jackson to return to the house but informed him that he needed to be patted down for safety. Without formally placing Jackson under arrest, Sgt. Murphy walked Jackson to the cruiser and placed him in the backseat. She and another officer who had arrived on the scene then searched Jackson's car, where Sgt. Murphy found a bag containing a white powdery substance underneath the car's radio.

While Sgt. Murphy was searching Jackson's car, Jackson realized that the power windows were not locked and that he was able to open the backseat door. Jackson proceeded to exit from the cruiser and left the scene. Upon noticing that Jackson was no longer in the cruiser, Sgt. Murphy initiated a search for Jackson. Neither the Columbus Police Department, the Airport Police Department, nor the Mifflin Police Department located Jackson that night.

Sgt. Murphy positively identified Jackson through his Bureau of Motor Vehicles ("BMV") photograph, compared it against the registration information listed for the car with the BMV, and confirmed that Jackson was the owner of the car. She also issued warrants against

him for possession of cocaine, obstructing official business, and drug paraphernalia. Jackson surrendered himself several days later.

### B. The February 25, 2006 Stop and Arrest

Around midnight on February 25, 2006, Sgt. Murphy was driving northbound on Goshen Lane on patrol at the same time as Jackson was driving southbound on Goshen Lane. Sgt. Murphy noticed in her side mirror that the license plate light on the southbound car was not working and made a u-turn to initiate a traffic stop. Sgt. Murphy activated her emergency beacons, and Jackson turned off of Goshen Lane onto Goshen Court. While he was decelerating on Goshen Court, Jackson's driver's side door opened slightly. Once both cars had stopped, Sgt. Murphy approached Jackson's car and told him to roll down his window, shut his door, and turn his car off. Sgt. Murphy fully shut the door and Jackson turned off his vehicle before saying, "Haven't I met you here before?" Sgt. Murphy did not respond to this question but asked Jackson for his driver's license. She also requested backup over her police radio.

Jackson handed Sgt. Murphy a green Ohio Identification Card ("ID card"). Sgt. Murphy had by this point in time recognized Jackson from their January 19th encounter and assumed based on that encounter that she would find narcotics or something else illegal on his person or in his car. Immediately after Jackson turned over his ID card, the following exchange took place as memorialized in a video that recorded the event from the perspective of Sgt. Murphy's police cruiser:

>SGT. MURPHY:   How 'bout the registration and the insurance?
>
>JACKSON:   Uhh...
>
>SGT. MURPHY:   What do you have illegal on you, sir?

| | |
|---|---|
| JACKSON: | Ma'am... |
| SGT. MURPHY: | Sir, I asked you a question. What do you have illegal on you? You, or in the car – knives, weapons, narcotics – 'cause we're not having a repeat of last time, you understand me? |
| JACKSON: | And, and you know what... |
| SGT. MURPHY: | Sir, I asked you a question... |
| JACKSON: | You know what... |
| SGT. MURPHY: | ...answer it directly. |
| JACKSON: | I'm not answering... |
| SGT. MURPHY: | Get out of the car. |
| JACKSON: | I'm not answering anything.... |
| SGT. MURPHY: | Get out of the car. |
| JACKSON: | No I'm not getting out of the car. |
| SGT. MURPHY: | Sir, you're under arrest because – Sir! Don't you – you move I'm going to shoot you with this, with this right now, do you understand me? Get your hand off there now, get your hand off now or I'm going to shoot you with this taser, you understand? |

Sgt. Murphy contends that her order for Jackson to stop moving was prompted by his attempt to start his car. Jackson contends that his hand was on the gear shift but that he made no attempt to restart his car. The encounter continued as follows:

| | |
|---|---|
| JACKSON: | Well, what... |
| SGT. MURPHY: | Get out of the car, sir, or I am going to shoot you with this taser! |

4

| | |
|---|---|
| JACKSON: | Ma'am... |
| SGT. MURPHY: | Get out of the car, you're under arrest! |
| JACKSON: | For what? |
| SGT. MURPHY: | You're under arrest for driving under suspension. Get out of the car. Do it now. |
| JACKSON: | I'm not driving under a suspension. |
| SGT. MURPHY: | Sir, sir, get out of the car, or I'm going to shoot you with this taser. Do you understand me? Get out of the car. Now! |

Sgt. Murphy commanded Jackson to get out of the car three more times before she tasered him.

What happened next is disputed by the parties. According to the Defendants and supported by deposition testimony, Jackson pushed Sgt. Murphy backwards as he got out of the car and grabbed the hand in which she was holding the taser. Sgt. Murphy hit Jackson on the head to regain control of the taser and was tasered by Jackson twice on her left hand as the two fell backwards. Sgt. Murphy radioed for help, and a bystander joined the attempt to subdue Jackson. Jackson struck Sgt. Murphy in the face with his elbow before the bystander restrained him. Once restrained, Jackson continued to struggle and disobeyed Sgt. Murphy's order to get on the ground.

At this point, Gahanna Police Officer Darren Price arrived on the scene in response to Sgt. Murphy's earlier distress call. He deployed pepper spray on Jackson, drew his service weapon, and ordered Jackson to drop the taser. Officer Gray and Detective Mike Apple arrived

5

on the scene, but Jackson disobeyed several more orders to drop the taser before finally relinquishing the weapon.

According to the Plaintiff, Jackson attempted to comply with Sgt. Murphy's order to get out of the car after she had tasered him. Instead of allowing him to exit the car, Sgt. Murphy hit Jackson in the head and swung him into a car. Sgt. Murphy, Jackson, and the bystander struggled together until the bystander restrained Jackson. While Jackson was still held by the bystander, Sgt. Murphy struck him in the groin, another officer sprayed him with pepper spray, and Sgt. Murphy instructed an officer with a drawn firearm to shoot Jackson. The plaintiff contends that all of Jackson's actions during this altercation were defensive.

The parties do not dispute the way the encounter concluded. Jackson was ultimately detained by the police, arrested, and placed in the back of a police cruiser. The officers searched Jackson's car and found a box containing a small digital scale, a bag of cocaine, a bag of marijuana, and two gold-colored packages of condoms. At the police station during booking, the police additionally recovered a large amount of cash bundled by denomination from Jackson's pockets. The police weighed the narcotics at the station and determined that they had found 16.2 grams of cocaine, 3.8 grams of marijuana, 3 marijuana joints, and 3 prescription tablets in Jackson's car.

Jackson has provided uncontested evidence that his driver's license was suspended for failure to provide proof of financial responsibility. Ohio Rev. Code Ann. § 4509.101. Some time before February 25, 2006, Jackson had submitted the SR-22 bond that reinstated his driving privileges and had received a letter from the BMV informing him that his suspension was no longer in effect. He had not, however, gone to the BMV to obtain a new license.

Jackson was arrested and charged with six offenses on February 25, 2006: (1) Felonious Assault in violation of Ohio Rev. Code Ann. § 2905.11; (2) Possession of Cocaine in violation of Ohio Rev. Code Ann. § 2925.11; (3) Possession of Marijuana in violation of Ohio Rev. Code Ann. § 2925.11; (4) Possession of Drug Paraphernalia in violation of Ohio Rev. Code Ann. § 2925.14; (5) Open Container in violation of Ohio Rev. Code Ann. § 4301.62; and (6) License Plate Required in violation of Ohio Rev. Code Ann. § 4513.05.  The prosecuting attorney, however, declined to prosecute any charges against Jackson arising from that night.

### D.  This Lawsuit

On December 19, 2007, Jackson filed his initial complaint in the Franklin County Court of Common Pleas.  On January 23, 2008, the Defendants filed a Notice of Removal before this Court, and Jackson filed his complaint.  *Notice*, Doc. No. 2; *Complaint*, Doc. No. 3.  Jackson named the following defendants in his complaint: the City of Gahanna ("Gahanna"), Gahanna Police Sergeant Sheila Murphy and Police Chief Dennis Murphy ("Chief Murphy").  In his complaint, Jackson alleged four separate federal claims against all three defendants: (1) arrest and detention without probable cause in violation of the Fourth and Fourteenth Amendments; (2) malicious prosecution in violation of the Fourth and Fourteenth Amendments; (3) use of excessive force in violation of the Fourth and Fourteenth Amendments; and (4) targeting the Plaintiff for arrest and use of force in violation of the Equal Protection Clause of the Fourteenth Amendment.  The Defendants filed a Motion for Summary Judgment on April 15, 2010.  *Motion*, Doc. No. 36.  The motion has been fully briefed and argued, and is now ripe for decision.

### III.  STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). *See also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

## IV. LAW & ANALYSIS

The Plaintiff has sued under 42 U.S.C. § 1983, which "by its terms does not create any substantive rights but rather 'merely provides remedies for deprivations of rights established elsewhere.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on his § 1983 claims, the Plaintiff "'must establish that a person acting under color of state law deprived [him] of a right secured by the Constitution or laws of the United States.'" *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001)).

The Defendants contend in their Motion for Summary Judgment that they are entitled to summary judgement on all of the claims against them. The Plaintiff in his response withdraws his Fourteenth Amendment Equal Protection Claim and all claims against Chief Murphy and Gahanna. Accordingly, the Equal Protection Claim is **DISMISSED** as to all Defendants, and the unreasonable seizure, excessive use of force, and malicious prosecution claims are **DISMISSED** as to Defendants Chief Murphy and Gahanna. The Plaintiff opposes summary judgment on his three remaining claims against Defendant Sgt. Murphy ("the Defendant"): (1) arrest and detention without probable cause in violation of the Fourth and Fourteenth Amendments; (2) malicious prosecution in violation of the Fourth and Fourteenth Amendments; and (3) use of excessive force in violation of the Fourth and Fourteenth Amendments. The Court will address each claim in turn.

### A. Arrest and Detention Without Probable Cause

The Defendant contends that she is not liable for an unlawful seizure because she had probable cause to arrest the Plaintiff based on his presentation of an ID card that provided *prima*

*facie* evidence that he did not have a valid driver's license.[1]  The Plaintiff counters that the Defendant arrested him without probable cause to believe that he was driving with a suspended license or that he had violated any other laws because the Defendant had access to sufficient identifying information to discover the existence of the Plaintiff's valid license.

"The Fourth Amendment, which is made applicable to the states by its incorporation into the Fourteenth Amendment, mandates that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'" *Radvansky*, 395 F.3d at 302 (quoting *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004)).  A police officer has probable cause to make an arrest when "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [she] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (although arresting officers must "be able to articulate concrete facts from which they infer a probability that illegality has occurred[,] . . . the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial").  "A reviewing court must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky*, 395 F.3d at 302 (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).  Determining whether probable cause exists "'presents a jury question, unless there is only one reasonable

---

[1] In her Motion for Summary Judgment, the Defendant argued that she had reasonable suspicion to conduct an investigatory stop of the Plaintiff.  In his response, the Plaintiff conceded the existence of reasonable suspicion for an investigative stop, and the Court therefore will not address this argument.

determination possible.'" *Gardenhire*, 205 F.3d at 315 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)). Construing the evidence in the light most favorable to the Plaintiff, the Court must determine whether a jury could only conclude that a reasonable officer would have believed that the Plaintiff had committed or was committing a crime.

In the case sub judice, the Defendant's professed reason for arresting the Plaintiff was that he was driving with a suspended license. In *Devenpeck v. Alford*, 543 U.S. 146 (2004), however, the Supreme Court rejected the rule "that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." *Id.* at 153. Rather, the "[s]ubjective intent of the arresting officer . . . is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 154-55; *see also United States v. Evans*, 581 F.3d 333, 343 (6th Cir. 2009). Thus, whether the arrest occurred in violation of the Fourth Amendment depends upon the existence of probable cause for any offense.

The Defendant cites three separate offenses for which she had probable cause to arrest the Plaintiff. First, the Defendant claims she had probable cause to believe that the Plaintiff was operating a motor vehicle with a driver's license that has been suspended. Ohio Rev. Code Ann. § 4510.11. Second, she claims she had probable cause that the Plaintiff did not "furnish satisfactory proof" that he had a valid driver's license. Ohio Rev. Code Ann. § 4507.35. Third, she claims she had probable cause that the Plaintiff was operating a motor vehicle without a valid driver's license. Ohio Rev. Code Ann. § 4510.12.

**1. Driving Under Suspension**

At the time of the arrest, the Defendant knew the Plaintiff's name and knew that the Plaintiff had a green ID card.[2] The ID card contained the Plaintiff's address, date of birth, and other identifying information, *see* Ohio Rev. Code Ann. §§ 4507.51 - 4507.52, as well as the declaration that the bearer of the card "currently is not licensed to operate a motor vehicle in the state of Ohio," Ohio Rev. Code Ann. § 4507.52.

The Plaintiff argues that there was no probable cause to arrest him for driving under a suspended license. In support of his position, the Plaintiff has provided the testimony of Lieutenant Daniel Williams ("Lt. Williams"), the Defendant's immediate supervisor. Lt. Williams testified that the normal practice of the Gahanna Police Department, which the Defendant did not follow, is to check a driver's driving privileges through the BMV before placing him under arrest for driving with a suspended license; this procedure would take no more than two minutes. In the opinion of Lt. Williams, the Defendant did not have probable cause to arrest the Plaintiff for driving under a suspended license. The Defendant argues that the provision of the ID card, which declared that the bearer of the card is not a licensed driver, gave rise to probable cause to arrest the Plaintiff.

The Court cannot conclude that the only reasonable interpretation of the evidence presented is that the Defendant had probable cause to arrest the Plaintiff for driving under suspension. *See Gardenhire*, 205 F.3d at 315. As discussed below, the Plaintiff's presentation of the ID is a fact that gives rise to the inference that the Plaintiff does not have a valid driver's license but that does not suggest that the Plaintiff has a suspended driver's license. The

---

[2]The Plaintiff's repeated declarations that his license was not suspended occurred after the Defendant had placed him under arrest.

Defendant has pointed to no facts that support the inference that the Plaintiff's license was suspended; the Defendant's motion therefore cannot be granted on this ground.

### 2. Failure to Furnish Satisfactory Proof of License

The Plaintiff argues that he furnished satisfactory proof of a valid driver's license by providing the Defendant with enough identifying information so that his driving status could be ascertained. The Defendant argues that the ID card provided probable cause for the arrest. Ohio Rev. Code Ann. § 4507.35 reads as follows:

> The operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer . . . . A person's failure to furnish satisfactory evidence that the person is licensed under this chapter when the person does not have the person's license on or about the person's person shall be prima-facie evidence of the person's not having obtained a driver's license.

Ohio courts have applied "a standard of objective reasonableness in determining what type of proof is satisfactory." *State v. DiGiorgio*, 117 Ohio App. 3d 67, 69 (Ohio Ct. App. 1996) (arrest not supported by probable cause where driver provided his name, address, and social security number and computer check revealed the existence of a valid driver's license). A jury could conclude that the Defendant's reliance on the ID card and its declaration that its bearer was not a licensed driver was reasonable and constituted probable cause for the arrest. A jury could also conclude that the information provided by the Plaintiff, which upon verification in accordance with Gahanna Police procedures would have shown the existence of the Plaintiff's driving privileges, was satisfactory evidence that he was licensed and that the Defendant unreasonably

failed to "take into account all the evidence" before her. *Klein v. Long*, 275 F.3d 544, 551-552 (6th Cir. 2001). The Defendant's motion therefore cannot be granted on this ground.

### 3. Operating a Motor Vehicle Without a Valid License

The Plaintiff argues that there was no probable cause to arrest him for driving without a valid license because the Defendant had available to her sufficient information to ascertain that, although only in possession of the ID card, the Plaintiff had driving privileges. The Defendant counters (1) that because a person cannot have both an ID card and a license, Ohio Rev. Code Ann. § 4507.52(A), the Plaintiff's provision of his ID card provided probable cause on this count; and (2) that the Defendant was under no duty to verify the status of the Plaintiff's license before concluding that she had probable cause for an arrest.

A police officer has probable cause when she "discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire*, 205 F.3d at 318. An officer must, however, "take into account all the evidence – both inculpatory and exculpatory – that [s]he has at the time of the arrest." *Klein,* 275 F.3d at 551-552 (6th Cir. 2001). An officer "in the process of determining whether probable cause exists . . . cannot simply turn a blind eye toward potentially exculpatory evidence known to [her] in an effort to pin a crime on someone." *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999). "Where the police have sufficient inculpatory evidence to give rise to a determination of probable cause and they do not know of any exculpatory evidence, . . . 'the failure to make a further investigation does not negate probable cause.'" *Klein*, 275 F.3d at 552 (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 173 (6th Cir. 1987)).

The Plaintiff's argument fails because the Defendant had sufficient inculpatory evidence – the ID card – to give rise to probable cause and did not have exculpatory information towards which she turned a blind eye.  Exculpatory information is information that itself suggests innocence of the crime alleged.  In *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1011 (6th Cir. Ohio 1999), for example, the defendants argued that they were entitled to summary judgment because the police officers had probable cause to arrest the plaintiffs for carrying concealed weapons.  The Sixth Circuit upheld the district court's denial of the motion because at the time of the arrest, the police officers knew that the defendants had a legitimate purpose for carrying the weapons.  *Id.*  This knowledge was exculpatory information precluding a finding of probable cause.  Similarly, in *Gardenhire*, 205 F.3d at 315, suspects in a theft investigation asserted to the police that they had been framed.  Items reported to have been stolen were present in the suspect's store, but were arranged in such a way as to suggest a set-up.  *Id.*  The defendants argued that they had no duty to investigate the suspects' version of events, but the court concluded that the presence of both inculpatory and exculpatory evidence meant that the question of probable cause was one "properly reserved to the fact-finding province of a jury." *Id.* at 318.  In both of these cases, the officers at the time of arrest and without further investigation had information that gave rise to an inference of innocence.  The information that the Plaintiff claims was exculpatory – data that, if run through dispatch, would have verified that the Plaintiff possessed driving privileges – did not itself contradict the inference from the Plaintiff's provision of an ID card that he was not licensed to operate a motor vehicle.  If verified with dispatch, this information would have yielded evidence suggesting the Plaintiff's innocence, i.e. that the Plaintiff's license was no longer suspended.  But the Defendant was not

15

obligated to conduct such an investigation once she had reasonably reliable evidence that the Plaintiff had committed a crime. The green ID card was such evidence, and the Defendant's motion for summary judgment on the Plaintiff's unreasonable seizure claim is **GRANTED**. The claim is hereby **DISMISSED.**

### B. Malicious Prosecution

The Plaintiff contends that Sgt. Murphy is liable for malicious prosecution in violation of the Fourth Amendment. The Plaintiff bases this claim on his allegation that the Defendant arrested him without probable cause. The Defendant counters that she cannot be liable for malicious prosecution because she had probable cause for the arrest.

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003). In order successfully to assert such a claim, "a plaintiff must show, at a minimum, 'that there was no probable cause to justify [his] arrest and prosecution.'" *Id*. (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001)). In light of this Court's conclusion that the Defendant had probable cause to arrest the Plaintiff for driving without a valid license, the Plaintiff's malicious prosecution also fails. The Defendant's motion for summary judgment on this count is accordingly **GRANTED**, and the malicious prosecution claim against the Defendant is **DISMISSED.**

### C. Excessive Use of Force

The Plaintiff alleges that the video footage documenting the arrest demonstrates that the Defendant grabbed him, attacked him with a taser, pulled him from his car, hit him on the head, and struck him in the groin while he was restrained by a bystander. On the basis of these

allegations, the Plaintiff contends that the Defendant violated his Fourth Amendment right to be free from excessive force during an arrest. The Defendant argues that she is entitled to summary judgment on this claim because her actions were objectively reasonable under the circumstances, which included the Plaintiff's active resistance, his attempt to restart his car, and the speed with which the events unfolded.

There is a constitutional right to be free from excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386 (1989). Claims for excessive force in the course of an arrest, stop, or seizure are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Id*. at 388. In assessing an excessive force claim, the Court must construe all the facts in the record in the light most favorable to the Plaintiff. *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010). After doing so, the question of whether the Defendant's actions were objectively unreasonable "is a pure question of law." *Id*. (citing to *Champion v. Outlook Nashville, Inc*., 380 F.3d 89, 901 (6th Cir. 2004)). Where there is a video of the events at issue, the Court determines "as a matter of law whether the events depicted on the video, taken in the light most favorable to [the Plaintiff], show that the Officers' conduct was objectively reasonable." *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should . . . view[] the facts in the light depicted by the videotape.").

In order to determine whether the force used during an arrest or seizure was objectively unreasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."

*Graham*, 490 U.S. at 396 (internal citations omitted).  The Court should look to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The reasonableness must be judged from the point of view of the officer on the scene at the time the force was used.  *Id*.

The first factor requires the Court to determine whether resistance or evasion of arrest enhanced the severity of even a "mere traffic related offense," *Dunn*, 549 F.3d at 354 (internal quotations omitted).  Considering the evidence in the light most favorable to the Plaintiff, the Plaintiff's resistance included no more than a refusal to get out of his car.  This is unlike the prolonged car chase in *Dunn* and does not lead to the conclusion that the offense was more severe than the traffic offenses charged.  This factor, then, warrants only a minor use of force.

As to the second factor, the Defendant argues that the Plaintiff's resistance created a safety risk to her through the unpredictability of his next act of noncompliance.  Although a person who is resisting arrest poses at least some risk to the safety of the arresting officer, this allegation again does not warrant more than a minor use of force.

The third factor also does not warrant the use of a high degree of force when taking the facts in the light most favorable to the Plaintiff.  According to him, his only resistance to arrest prior to being tasered was his refusal to get out of his car.

Central to all three of these factors in this case is the degree to which the Plaintiff was resisting arrest.  Before the Defendant told the Plaintiff he was under arrest, the Plaintiff refused several times to answer her questions and to obey her order to get out of the car; such a refusal was within his rights.  *Fla. v. Royer*, 460 U.S. 491, 498 (U.S. 1983) (in an investigatory stop, a

18

person may refuse to answer any question put to him by an officer) (citing *Terry v. Ohio*, 392 U.S. 1, 34 (1968) (White, J., concurring)).  After he was under arrest, the Defendant ordered him to get out of the car at least seven times and warned him that she would use the taser on him if he didn't comply.  When he did not comply, the Defendant laid her hands on the Plaintiff and tasered him.  These facts are not in dispute.

What is in dispute is whether the Plaintiff's resistance for an arrest based on a minor traffic offense was merely passive, warranting a limited degree of force, or active, warranting a greater degree of force.  The video did not capture and therefore cannot resolve whether the Plaintiff was attempting to restart his car and drive away as the Defendant alleges or whether he was merely resting his hand on the gear shift as the Plaintiff alleges.  Nor does the video resolve whether the Defendant hit the Plaintiff in the head following what was his attempt to charge towards her or what was his attempt to get out of the car in compliance with her orders.  The strike to the groin, too, occurred off-camera and may have happened while the Plaintiff still posed a threat or after the Plaintiff had been restrained by a bystander and posed no threat to others.  Because the use of the taser and the other force applied by the Defendant during her attempt to restrain the Plaintiff are relatively serious exercises of police force, the factual dispute about the degree of the Plaintiff's resistance is material to the Court's determination of the reasonableness of the uses of force.  Viewing the facts in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find that the Defendant's use of force was excessive, and summary judgment cannot be granted.  *See St. John v. Hickey*, 411 F.3d 762, 772 (6th Cir. 2005) (reversing grant of summary judgment because of genuine issues of material fact over the reasonableness of the force applied to a person arrested for a minor crime who was only

passively resisting arrest and posed no flight or safety risk); *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002) (reversing grant of summary judgment where officer used pepper spray on person arrested for minor crime who posed no safety threat and was actively resisting arrest); *Minchella v. Bauman*, 72 Fed. App'x 405, 409 (6th Cir. 2003) (concluding that factual dispute over officers' use of force and arrestee's resistance preclude summary judgment). The Defendant's motion on this claim is accordingly **DENIED.**

## V. CONCLUSION

For the reasons set forth in this Opinion, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** with respect to all claims against Defendants Gahanna and Chief Murphy; the Equal Protection claim against all parties; the Fourth Amendment arrest without probable cause claim against Defendant Sgt. Murphy; and the Fourth Amendment malicious prosecution claim against Defendant Sgt. Murphy. The aforementioned parties and claims are accordingly **DISMISSED**. The Motion is **DENIED** with respect to the Fourth Amendment excessive use of force claim against Defendant Sgt. Murphy.

**IT IS SO ORDERED.**

                                                  _s/Algenon L. Marbley_____
                                                  **Algenon L. Marbley**
                                                  **United States District Judge**

**Dated: November 23, 2010**